IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 13, 2012

Lyle W. Cayce
Clerk

No. 12-10240

RALPH S. JANVEY, In His Capacity as Court-Appointed Receiver for the Stanford International Bank, Limited, Et Al.,

                                              Plaintiff - Appellant

v.

LIBYAN INVESTMENT AUTHORITY; LIBYAN FOREIGN INVESTMENT COMPANY,

                                              Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-1177

Before JOLLY, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

    Ralph S. Janvey, Receiver of the entities comprising the Stanford Receivership, seeks to impose a preliminary injunction on funds belonging to the Libyan Investment Authority ("LIA"). The district court denied Janvey's motion for a preliminary injunction. Because we conclude that the Foreign Sovereign

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-10240

Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq.*, prevents the entry of such an injunction, we AFFIRM the district court's judgment.

## I.

Allen Stanford sold certificates of deposit ("CDs") through Stanford International Bank, Ltd. ("SIB"). Stanford operated a Ponzi scheme by paying fictitious interest to investors through SIB. When the Securities and Exchange Commission began investigating Stanford's scheme, the district court assumed jurisdiction over the assets and records under Stanford's control. These assets and records became the receivership estate. In a Receivership Order, the district court appointed Ralph S. Janvey to serve as Receiver and vested him with "the full power of an equity receiver under common law as well as such powers as are enumerated" in the Order.

Among the investors in Stanford's Ponzi scheme was the Libyan Foreign Investment Company ("LFICO"), an entity established by the government of Libya. In 1981, the Libyan government created LFICO's predecessor, the Libyan Arab Foreign Investment Company, for the purpose of investing Libyan money outside of Libya. LFICO invested $138.9 million in SIB CDs between March 2006 and August 2007. Starting in October 2008, LFICO began to withdraw significant amounts of money from the Stanford CDs. Between November 2008 and January 2009, LFICO withdrew approximately $51.6 million from its accounts with SIB; according to Janvey, $6.7 million of this was fictitious interest. Despite these withdrawals, at the time the fraud was revealed, LFICO had over $100 million in investments with SIB, making it, in the words of the district court, the "biggest net loser" in the Ponzi scheme.

In this proceeding, however, the Receiver does not seek funds belonging to LFICO. Instead, he seeks funds in the possession of the LIA, another entity established by the Libyan government. In 2006, the Libyan government

2

established the LIA for the "object of . . . invest[ing] and grow[ing] the funds allocated to it." The LIA is currently the sole shareholder of LFICO.

The Receiver alleges that approximately $55 million to $101 million dollars in proceeds of SIB had been transferred fraudulently to LFICO. He further alleges that the transfer of these funds to LFICO had benefitted the LIA, given the relationship between the two entities. Accordingly, Janvey sought a temporary restraining order freezing funds in the amount of $54,823,740.83, and a preliminary injunction preventing the LIA and LFICO from dissipating those funds, which are currently held in accounts at Citibank, N.A.

The district court issued a temporary restraining order on June 6, 2011, and then held a hearing on January 27, 2012 to consider Janvey's request for a preliminary injunction. *Id.* The district court denied the motion. *Id.* It ruled that Janvey had not shown a likelihood of success on the merits, because Janvey had not shown that LFICO had acted for the "benefit" of the LIA and had not shown that the LIA was an alter ego of LFICO.

On appeal, the Receiver argues that the district court's preliminary injunction analysis was erroneous. The LIA and LFICO maintain that the district court correctly concluded that Janvey has not satisfied the prerequisites for a preliminary injunction, or, alternatively, that the district court's ruling should be affirmed on the ground that the FSIA bars the relief sought by the Receiver.[1]

---

[1] The district court did not decide whether the FSIA barred the injunction sought by the Receiver. In a footnote, it did state that, if it had reached the issue because the Receiver had demonstrated a likelihood of success on the merits, it "would [have] most likely [held] that the FSIA provision did not apply." In the footnote, the district court explained that a ruling that the Receiver had shown a likelihood of success would imply that the LIA did not possess the "property of a foreign state," as such a ruling would necessarily rest on a conclusion that the funds sought by the Receiver had been the subject of a fraudulent transfer.

3

No. 12-10240

## II.

The LIA and LFICO are correct that the FSIA did not permit the district court to enter an injunction under these circumstances.[2] Under the FSIA, "[s]ubject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter." 28 U.S.C. § 1609. The following circumstance provides one such exception:

> The property of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment prior to the entry of judgment in any action brought in a court of the United States or of a State, or prior to the elapse of the period of time provided in subsection (c) of this section, if – (1) the foreign state has explicitly waived its immunity from attachment prior to judgment, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, and (2) the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction.

*Id.* § 1610(d).

The Receiver does not dispute that the LIA, an agency of the Libyan government, has not explicitly waived its immunity from attachment prior to a judgment on the merits in this case; instead, he contends that § 1610(d) is inapplicable to the circumstances here because, first, the preliminary injunction he seeks is not functionally equivalent to an attachment; and, second, the LIA does not hold legal or equitable title to any funds fraudulently transferred from SIB to LFICO for the "benefit" of the LIA.

---

[2] Because the FSIA disposes of this case, we do not reach the district court's ruling that the Receiver had failed to satisfy the prerequisites for an injunction.

4

We reject both arguments. With respect to the Receiver's first argument, the preliminary injunction sought by the Receiver would effectively freeze the funds belonging to the LIA pending the district court's resolution of the merits of the case. Accordingly, in this case, a preliminary injunction would serve the same purpose as an attachment. *See Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1177 (5th Cir. 1989). For this reason, the FSIA's prohibition on "attachment[s]" of property belonging to a foreign sovereign prevented the district court from entering a preliminary injunction here.

Moreover, with respect to the Receiver's second argument, no evidence has been presented that, in these specific circumstances, the LIA received any "benefit" that would make the funds belonging to the LIA subject to relief under Texas's version of the Uniform Fraudulent Transfer Act. *See* Tex. Bus. & Com. Code § 24.009(b)(1). As a consequence, the Receiver fails to demonstrate that the LIA does not hold legal or equitable title to the funds he seeks. In other words, the Receiver's argument that the funds are not "property of a foreign state" for purposes of 28 U.S.C. § 1610(d) has no merit because there is no evidence that the funds at issue in this particular case have ever been the subject of a fraudulent transfer by the SIB.

Thus, under the language of the FSIA, the funds sought by the Receiver are "property of a foreign state" and are not subject to attachment. Because the preliminary injunction sought by the Receiver is functionally equivalent to an attachment, the Receiver's motion cannot be granted.

## III.

The district court's judgment denying the Receiver's motion for a preliminary injunction is therefore AFFIRMED.